# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

| | |
|---|---|
| INDUSTRIAL SERVICES GROUP, INC., d/b/a/ UNIVERSAL BLASTCO,<br><br>Plaintiff,<br><br>v.<br><br>JOSH DOBSON, *in his official capacity as North Carolina Commissioner of Labor*; and JENNIFER HAIGWOOD, *in her official capacity as Director of the Occupational Safety and Health Division of the North Carolina Department of Labor*,<br><br>Defendants. | Civil Action No. 1:24-cv-00061-MR-WCM |

## **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

Defendants' motions to dismiss—which they have styled as six separate "motions"—not only repeatedly distort the text of the federal Occupational Safety and Health ("OSH") Act and mischaracterize the relief sought by Plaintiff Industrial Services Group, Inc. ("ISG") in its complaint, but also reassert arguments previously dismissed by this Court in ISG's first action.[1] ISG seeks a declaratory judgment finding that Defendants' official policy or practice of incentivizing its compliance officers to issue citations to employers directly violates and is preempted by a provision of the OSH Act, 29 U.S.C. § 657(h). ISG also seeks an injunction prohibiting Defendants from continuing to do so. Despite Defendants' repeated arguments to the contrary, this sort of relief lies well within the Article III powers of the federal courts and does not depend on any action by the United States Department of Labor.

---

[1] References made to filings in the first lawsuit will be designated as "ISG I", and references to filings in this present lawsuit will be designated as "ISG II".

Contrary to Defendants' assertions, this action is not barred by collateral estoppel and issue preclusion or by the applicable statute of limitations. Additionally, Defendants have not met their burden to show that any of the doctrines of abstention proffered apply to this action. For these reasons, explained more fully below, the Court should deny each of Defendants' motions.

## **Legal Standards**

When evaluating a motion to dismiss for lack of subject matter jurisdiction, the Court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). When a motion brought pursuant to this rule contends that the complaint fails to allege facts supporting a finding of subject matter jurisdiction, the facts in the complaint "are assumed true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Lucas v. United States, No. 2:18-CV-59-FL*, 2020 WL 3889444, at *2 (E.D.N.C. Feb. 3, 2020), *report and recommendation adopted*, No. 2:18-CV-59-FL, 2020 WL 1702224 (E.D.N.C. Apr. 7, 2020), *aff'd*, 823 F. App'x 176 (4th Cir. 2020) (internal quotation marks and citations omitted). Where a 12(b)(1) motion contends that the facts needed to establish jurisdiction do not exist, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (citations omitted). The plaintiff bears the burden of showing federal jurisdiction. *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d at 768; *see also West v. J.O. Stevenson*, 164 F. Supp. 3d 751, 760 (E.D.N.C. 2016).

On a motion to dismiss for failure to state a claim, the Court must accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the nonmoving party. *Mason v. Machine Zone, Inc.*, 851 F.3d 315, 319 (4th Cir. 2017). To survive a Rule 12(b)(6) motion, a complaint must simply contain sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss under Rule 12(b)(1), "[w]here a defendant contends that a complaint fails to allege facts upon which the Court can base subject matter jurisdiction, the Court, like ruling on a motion to dismiss pursuant to Rule 12(b)(6), assumes as true the factual allegations in the complaint." *Newman v. Tribal Casino Gaming Enter.*, No. 1:17-cv-77, 2017 WL 9516055, at *1 (W.D.N.C. Sept. 8, 2017) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)), *aff'd*, 714 F. App'x 316 (4th Cir. 2018).

## Argument

**I.    Collateral estoppel and issue preclusion do not bar this lawsuit.**

In their first "motion" to dismiss, Defendants claim that the doctrine of "collateral estoppel" or "issue preclusion" bars ISG's claims. (*ISG II*, D.E. 9-1 at 4-8). Defendants' arguments miss the mark.[2]

Under Supreme Court precedent, which Defendants fail to cite, when a case is dismissed without prejudice, res judicata generally does not apply. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("Dismissal without prejudice is a dismissal that does not operate as an adjudication upon the merits under Rule 41(a)(1), and thus does not have res judicata effect.") (cleaned up). *See also Lynk v. LaPorte Superior Court No. 2*, 789 F.2d 554, 566 (7th Cir. 1984)

---

[2] Indeed, it is somewhat baffling that Defendants raise their res judicata argument, which rests on "promoting judicial economy by preventing needless litigation," *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 326 (1979) (cited by Defendants at D.E. 9-1 at 5), given that Defendant reassert multiple "motions" to dismiss even though the Court has rejected the very same arguments previously.

3

(holding that res judicata and collateral estoppel do not arise from a dismissal without prejudice "by definition"); *Davis v. Raines*, Case No. 7:17cv107, 2017 WL 6327828, at *3 (W.D.Va. Dec. 11, 2017) (citing *Cooter* and holding that a prior dismissal without prejudice did not operate as res judicata for new lawsuit). This conclusion is obvious, as the contrary conclusion would nullify the "without prejudice" nature of the dismissal.

Defendants attempt to get around this binding precedent by citing *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. Openband at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013), for the proposition that dismissals for lack of standing must be without prejudice, and *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 912 n.2 (4th Cir. 2013), for the proposition that "a jurisdictional dismissal . . . still operates to bar relitigation of issues actually decided by that former judgment." (D.E. 9-1 at 14.) Defendants ignore *Purdue Pharma*'s statement that led to the quoted footnote: specifically, that "jurisdictional dismissals are not 'judgments on the merits for purposes of res judicata.'" *Id.* at 912 (citing *Goldsmith v. Mayor of Balt.*, 987 F.2d 1064, 1069 (4th Cir. 1993).

Applied here, Defendants fail to note what was "actually decided" by the former judgment. The Court dismissed *ISG I* upon Defendants' <u>facial</u> challenge to Article III standing for ISG. (*ISG I*, D.E. 63, at 7 ("Here, the undersigned reads the Motion to Dismiss as being a facial challenge to Plaintiff's Standing," and rejecting Defendants' argument that they were also making a factual challenge.). A facial challenge tests the legal sufficiency of the factual allegations in the Complaint, taken as true; it does not encompass any findings of fact. (*See id.* at 7 n.3.) All that was "actually decided" in *ISG I*, therefore, was whether ISG's complaint asserted factual allegations sufficient to prove standing; there was no decision regarding whether additional factual allegations (such as those asserted in the current Complaint) established

4

standing. Accordingly, Defendants' standing argument lacks merit and should be rejected.

**II.     The Complaint raises a federal question because 29 U.S.C. § 657(h) applies to Defendants.**

In their second "motion," Defendants argue that "[t]here is no subject matter jurisdiction to challenge the applicability of 29 U.S.C. § 657(h) to North Carolina's federally-approved state plan." (*ISG II*, D.E. 9-1 at 15). This "motion" should be denied for two reasons.

First, this Court has already ruled on this motion in the first lawsuit and determined that ISG's action seeking declaratory and injunctive relief on the ground that Defendants' enforcement activities against it are improper and preempted by or are in violation of federal law presents a federal question. (*ISG I*, D.E. 20 at 9-10) (citing cases). For these reasons, Defendants' "motion" should be denied.

Second, the text of the OSH Act, federal regulations promulgated under it, and official policy documents authored by Fed OSHA show that Defendants' assertion is plainly false. The OSH Act created Fed OSHA and tasked it with administering and enforcing the Act, including promulgating specific occupational safety and health standards through rulemaking. At the same time, it laid the groundwork for a comprehensive federal regulatory scheme, and the Act also "encourag[ed] the States to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws." 29 U.S.C. § 651(b)(11). To assume such responsibility, the State must submit (and Fed OSHA must approve) a "State Plan" that provides standards "at least as effective in providing safe and healthful employment" as those developed by OSHA. 29 U.S.C. § 667(c)(2). It must also "provide[ ] for a right of entry and inspection of all workplaces subject to this chapter which is at least as effective as that provided in section 657." *Id.* § 667(c)(3). 29 C.F.R. § 1902.3 lists the "specific criteria" that "[a] State plan must meet" in order to receive approval from Fed OSHA. A State Plan must "provide a

program for the enforcement of the State standards which is, or will be, at least as effective as that provided in the Act, and provide assurances that the State's enforcement program will continue to be at least as effective as the Federal program." 29 C.F.R. § 1902.3(d)(1).

This framework gives the States three options for how to proceed. First, a State can do nothing. In that case, the OSH Act and federal regulations promulgated under it apply directly to employers within that State, and Fed OSHA assumes direct responsibility for enforcing those standards. Second, a State can create and submit a comprehensive State plan for OSHA approval, covering all occupational safety and health standards and imposing its own requirements that are at least as effective as federal standards. In that case, once Fed OSHA issues final approval of the State plan, several sections of the OSH Act (including § 667) and occupational safety and health "standards promulgated under section 655" cease to apply "with respect to any occupational safety or health issues covered under the [State] plan." 29 U.S.C. § 667(e). Then, the State's own occupational safety and health laws apply, taking the place of federal standards, while a State administrative agency takes the place of Fed OSHA and begins administering and enforcing the State-created standards.

In option three, a State creates and receives approval of a State plan that is not comprehensive, i.e., it does not address every occupational safety and health standard covered by federal law. Fed OSHA recently explained what happens in this situation:

> A State Plan must have standards promulgated under state law that: are identical to OSHA standards; or are ALAE [at least as effective] as the comparable OSHA standards; or have been found by OSHA to provide protection ALAE as comparable OSHA standards. Where a State Plan has not promulgated standards in an area or has promulgated standards that OSHA has found not to provide protection as effective as that provided by the comparable OSHA standards, **the State Plan will not be considered operational in that area**.

*State Plan Policies & Procedures Manual*, Directive No. CSP 01-00-005, at 22 (O.S.H.A. May

6, 2020) (emphasis added).³ This means that in those areas not adequately covered by the State plan, federal law continues to apply directly. After all, the OSH Act makes clear that once a State plan receives final approval, federal law ceases to apply **only** "with respect to any occupational safety or health issues **covered under the plan**." 29 U.S.C. § 667(e) (emphasis added).

Here, the North Carolina State Plan falls under scenario three. North Carolina created a State Plan and received final approval from OSHA, but the Plan does not cover every occupational safety and health standard addressed by federal law. Specifically, it does not contain an analogue to 29 U.S.C. 657(h), which provides: "The Secretary shall not use the results of enforcement activities, such as the number of citations issued or penalties assessed, to evaluate employees directly involved in enforcement activities under this chapter or to impose quotas or goals with regard to the results of such activities." Quite the contrary, Defendants maintain a policy or practice mandating that the performance of "compliance officers"—who inspect workplaces for hazardous conditions and issue citations for alleged violations—be evaluated based on, among other things, "the number of inspections opened and closed, and the number of citations issued and upheld." (*See ISG II*, D.E. 1 at 2). Because the North Carolina State Plan does not contain a standard "at least as effective" as 29 U.S.C. § 657(h), the federal standard continues to apply.⁴

### III. Defendants' statute of limitation argument is without merit.

In their third "motion" to dismiss, Defendants argue that because ISG's claims, which "rely predominately on conduct alleged to have occurred on or prior to March 16, 2021, when [C]itations were issued to it at the conclusion of an OSHA fatality inspection," were filed beyond

---

³ *See* https://www.osha.gov/sites/default/files/enforcement/directives/CSP_01-00-005.pdf.
⁴ ISG addresses the other arguments contained in Defendants' second "motion" in subsequent sections, *infra*.

analogous statute of limitation periods, such claims are time-barred. (*ISG II*, D.E. 9-1 at 17-19).

Although Section 1983 provides a plaintiff with a federal cause of action, courts look to state law for determining the statute of limitations for such a claim. *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1161 (4th Cir. 1991) ("Because there is no federal statute of limitations applicable to suits under §1983, it is the rule that the applicable provision limiting the time in which an action [under §1983] must be brought, must be borrowed from the analogous state statute of limitations."). Under North Carolina law, the statute of limitations is three years "for any injury to the…rights of another, not arising on contract and not hereafter enumerated." *Brooks v. Stanley*, No. 7:19-CV-195-FL, 2020 WL 2430947, at *4 (E.D.N.C. May 12, 2020) (citing N.C. Gen. Stat. § 1-52(5)). "This statute of limitations applies to **all** §1983 claims." *Id.* (citing *Owens v. Okure*, 488 U.S. 235, 248 n.9 (1989) and *Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 66–67 (4th Cir. 2015)) (emphasis added). "[T]he accrual date of a §1983 cause of action is a question of federal law that is **not** resolved by reference to state law" but instead is "governed by federal rules conforming in general to common-law tort principles." *Id.* (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)) (emphasis in original). A §1983 claim is presumed to accrue once plaintiff has "a complete or present cause of action," that is when "the plaintiff can file suit and obtain relief." *Id.* (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).

Here, the statute of limitations for ISG's §1983 cause of action would begin to run when the Citations were issued on March 16, 2021.[5] Based on the three-year statute of limitations

---

[5] Defendants appear to suggest that the statute of limitation period could have begun running as early as March 11, 2019, when the incentivization practice was in effect. (*ISG II*, D.E. 9-1 at 11). However, if "practical considerations" dictate that "a particular claim may not realistically be brought while a violation is ongoing, such a claim may accrue at a later date." *Brooks*, 2020 WL 2430947 at *4 (citations omitted). Thus, while ISG asserts that the incentivization practice was in effect as early as March 11, 2019, ISG could not have realistically filed an action until the Citations were issued against it. This conclusion is obvious given the prior adjudication regarding whether ISG has standing to assert its claim: ISG's injury in fact is the issuance and continued prosecution of the Citations (*ISG I*, D.E. 63 at 10;

applied to §1983 claims, ISG had until March 16, 2024, to file its action. *See Brooks*, 2020 WL 2430947 at *4. ISG filed this instant action on February 22, 2024, within the three-year statute of limitation period. Thus, ISG's §1983 claim is not time-barred.

Like §1983 claims, the statute of limitations for claims brought pursuant to 28 U.S.C. §2201 is also borrowed from the analogous state statute of limitations. *See Staffing Advantage LLC v. Definitive Staffing Sols., Inc.*, No. 7:20-CV-00150-M, 2021 WL 2426340, at *10 (E.D.N.C. June 14, 2021) ("[D]eclaratory judgment actions are subject to the applicable statute of limitations, which is the one that governs the substantive right that is most closely associated with the declaration that is being sought.") (citing *Chisum v. Campagna*, 376 N.C. 680, 719, 855 S.E.2d 173, 199–200 (2021)). Courts within the Fourth Circuit have repeatedly applied a three-year statute of limitations to declaratory judgment actions. *See Cansler v. Univ. Health Sys. of E. Carolina, Inc.*, No. 4:22-CV-014-FL, 2023 WL 3147908, at *3 n.3 (E.D.N.C. Mar. 27, 2023), *appeal dismissed*, No. 23-1458, 2023 WL 7211402 (4th Cir. June 2, 2023); *Staffing Advantage LLC*, 2021 WL 2426340, at *9-10 (E.D.N.C. June 14, 2021).

Here, because ISG's §1983 cause of action is not time-barred, ISG's §2201 cause of action would also be timely. *Cf. MorningStar Fellowship Church v. York Cnty. S.C.*, No. 0:18-CV-03077-JMC, 2019 WL 2502049, at *12 (D.S.C. June 17, 2019) (holding that because the court finds plaintiff's §1983 claims time-barred, so too does it find plaintiff's declaratory judgment claim). Accordingly, Defendants' third motion is without merit and should be denied.

**IV. Federal law preempts Defendants' policy or practice of incentivizing compliance officers to issue citations.**

Defendants' fourth "motion" to dismiss concerns ISG's request for a declaration that 29 U.S.C. § 657(h) preempts their official policy or practice of evaluating compliance officers'

---

as well as the resulting lost business as a result of issuance of the Citation. (D.E. 1 at ¶¶38-39.)

performance based on the number of citations issued or penalties assessed. (*ISG II*, D.E. 9-1 at 14). As discussed in Section II, *supra*, Defendants' argument that "there is nothing that requires a State Plan to comply with" 29 U.S.C. § 657(h), (*ISG II*, D.E. 9-1 at 14), is flatly wrong and ignores the plain language of § 667(e). Again, because the North Carolina State Plan does not contain a standard "at least as effective as that provided in section 657[(h)]," § 667(c)(3), that issue is not "covered under the plan," § 667(e), meaning that § 657(h) continues to apply directly.

A natural and inevitable consequence of this is preemption. This doctrine, which gives force to the Supremacy Clause, holds that "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Felder v. Casey*, 487 U.S. 131, 138 (1988); *see* U.S. Const. art.VI, cl. 2 ("This Constitution, and the Laws of the United States…made in Pursuance thereof;…shall be the supreme Law of the Land;…any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). The Complaint asserts that the doctrine applies here because Defendants' official policy or practice of evaluating compliance officers' performance based on the number of citations issued or penalties assessed conflicts with § 657(h), which forbids this exact conduct. The Supreme Court has explicitly held that "the OSH Act pre-empts all state 'occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated.'" *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 105 (1992) (quoting § 667(b)).

While Defendants assert once again that "[o]nly Federal OSH has the authority to approve (or disapprove) a state plan," (*ISG II*, D.E. 9-1 at 15), ISG's complaint does not ask for that relief. Instead, ISG seeks a declaratory judgment finding that a federal law preempts a

contrary State law. This relief lies well within the established powers of the federal courts. *See* 28 U.S.C. §§ 2201(a), 2202.

Moreover, this Court has already ruled on this motion and determined that, in the context of a claim for declaratory relief, a motion to dismiss is generally not the appropriate means by which to establish substantively whether a plaintiff should prevail on its claim. (*ISG I*, D.E. 20 at 19) (citing cases). Because arguments regarding the interaction between 29 U.S.C. §§657(h) and 667 go to the merits of ISG's claims, rather than to the sufficiency of ISG's allegations, this Court concluded that ISG's preemption claims should be allowed to proceed. (*ISG I*, D.E. 20 at 19-20) (citing cases). For these reasons, Defendants' "motion" should be denied.

**V.     Under *Ex Parte Young*, sovereign immunity does not bar this lawsuit.**

Defendants claim that they are immune from suit pursuant to North Carolina's sovereign immunity, as recognized by the Eleventh Amendment. (*ISG II*, D.E. 9-1 at 17). However, ISG has not sued the State of North Carolina, the North Carolina Department of Labor, or NC OSHA. It has sued two individuals who are State officials in their official capacities for injunctive and declaratory relief. Thus, the century-old doctrine articulated by the Supreme Court in *Ex Parte Young* applies. 209 U.S. 123 (1908). "This doctrine holds that acts by state officials which are contrary to federal law cannot have been authorized or be ratified by the state; and suits seeking to enjoin such wrongful and unauthorized acts are not suits against the state and a federal courts' [sic] injunction against such wrongful acts is not a judgment against the state itself." *Saltz v. Tenn. Dep't of Emp't. Sec.*, 976 F.2d 966, 968 (5th Cir. 1992). And the doctrine applies even if a State has not waived its immunity or otherwise consented to the suit and regardless of whether Congress has abrogated the States' sovereign immunity in the statute creating the plaintiff's cause of action. *See Council 31 of Am. Fed'n of State, Cty. & Mun. Emps. v. Quinn*, 680 F.3d

875, 882 (7th Cir. 2012).

"The essential ingredients of the *Ex parte Young* doctrine are that a suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Saltz*, 976 F.2d at 968. ISG's complaint—by design—satisfies each of these criteria. Defendants are State officials sued in their official capacities, and the complaint seeks only forward-looking declaratory and injunctive relief. (See *ISG II*, D.E. 1 at 21-22).

Defendants argue that *Young* does not apply because the complaint does not seek prospective relief, that is, "[b]ased on the new factual allegations raised in ¶¶ 34-38, Plaintiff demonstrates that it is challenging the March 16, 2021, citations, penalties, and attorney's fees expended for defending those citations which is not prospective relief, but retrospective relief." (See *ISG II*, D.E. 9-1 at 18). However, the relief being sought is prospective because ISG seeks declaratory and injunctive relief as to future actions that NC OSHA may take against it, including continuing to prosecute the improperly issued citations outlined in the complaint, opening new inspections, issuing new citations, and commencing a new slate of administrative proceedings against it, perhaps in retaliation for ISG bringing this lawsuit.

Moreover, this Court has previously held that that ISG's suit "falls within the parameters of *Ex Parte Young* and that sovereign immunity does not bar [ISG]'s claims." (*See ISG I*, D.E. 20 at 10) (citing cases). For these reasons, Defendants' fifth "motion" to dismiss should be denied.

## VI. The doctrines of abstention are inapplicable.

In their sixth "motion" to dismiss, Defendants argue that the Court should abstain from deciding the matter currently pending before the North Carolina OSH Review Commission

("Commission") under the *Colorado River* and *Burford* abstention doctrines, or, in the alternative, the *Thibodaux* abstention doctrine. (*ISG II*, D.E. 9-1 at 19-24).

    A.  *Colorado River Doctrine*

Defendants first argue that this Court may abstain under the *Colorado River* doctrine. (*See ISG II*, D.E. 9-1 at 19-20). The *Colorado River* doctrine seeks to conserve judicial resources and otherwise avoid duplicative litigation when litigants seek to adjudicate the same dispute in both state and federal forums. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). However, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Colorado River*, 424 U.S. at 818. A court's task is to ascertain whether, in light of the heavy presumption in favor of retaining jurisdiction, exceptional circumstances justify its surrender. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983).

In assessing whether to abstain under *Colorado River*, "the district court must first determine whether the state and federal proceedings are parallel." *New Beckley Mining Corp. v. International Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991). The Fourth Circuit has "strictly construed the requirement of parallel federal and state suits, requiring that the parties involved be almost identical," *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 208 (4th Cir. 2006), and has cautioned district courts to avoid making this determination at "too general a level," *see Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005). "[S]ome factual overlap does not dictate that proceedings are parallel." *New Beckley*, 946 F.2d at 1074. Instead, the Fourth Circuit considers "the remedies sought and the issues raised." *See Chase Brexton Health Servs., Inc.*, 411 F.3d at 465; *New Beckley*, 946 F.2d at 1074 ("The

13

parties in both actions are virtually identical, but the issues raised and remedies sought are not…A difference in remedies is a factor counseling denial of a motion to abstain."); *see also Gannett Co. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 743 (4th Cir. 2002) (finding that the two actions at issue sought "different remedies").

Here, there is not much factual overlap between the cases. In this case, the factual issues will be focused on Defendant's illegal incentivization policy and practice: that is, the focus is on <u>Defendants'</u> conduct. In the Citation contest case in front of the North Carolina Occupational Safety and Health Review Commission, however, the factual issues will be focused on whether the Citations apply as alleged: that is, the focus is on <u>ISG's</u> conduct.

Further, the cases are not parallel. First, the case before the Commission and the case before this Court include different parties. *See Bell v. Am. Int'l Indus.*, No. 1:17CV111, 2020 WL 6546234, at *7 (M.D.N.C. Nov. 6, 2020) ("The Fourth Circuit has 'strictly construed the requirement…that [for suits to be parallel] the parties involved [must] be almost identical.'") (quoting *Great Am. Ins. Co.*, 468 F.3d at 208). Whereas the case before the Commission only included ISG and the Commissioner of Labor, the case before this Court also includes Jennifer Haigwood, in her official capacity as Director of Occupational Safety and Health Division of the NC DOL.

Second, the procedural posture before the Commission is quite different from the procedural posture in this case. *See Nat. Collegiate Athletic Ass'n v. Corbett*, 25 F. Supp. 3d 557, 572 (M.D. Pa. 2014) (finding that the cases were not parallel, in part, because the identical parties were in different procedural postures). In the case before the Commission, Defendant Dobson is the Complainant and ISG is the Respondent, whereas here, ISG is the plaintiff and Defendant Dobson is the defendant. Before the Commission, ISG was the movant, seeking to

dismiss the Citations under Rules 12(b)(6) and 56 of the North Carolina Rules of Civil Procedure, and Defendant was therefore entitled to a view of the facts in the light most favorable to him, including reasonable inferences therefrom. (*ISG I*, D.E. 17 at 4). Before this Court, on a motion to dismiss, ISG's Complaint is accepted as true and ISG is entitled to the drawing of reasonable factual inferences in its favor, not Defendants. *See Mason*, 851 F.3d at 319.

Finally, the issues raised and remedies sought before the Commission and this Court are not substantially similar. *See RF Micro Devices, Inc. v. Xiang*, No. 1:12CV967, 2013 WL 5462295, at *1 (M.D.N.C. Sept. 30, 2013). While ISG argued before the Commission that the Citations should be dismissed because Defendant Dobson and NC OSHA were operating and administering the State Plan in violation of federal law and the stated terms of the State Plan itself, (*ISG I*, D.E. 17 at 1, 4), ISG's §1983 and §2201 claims were **not** before the Commission. Moreover, these arguments were **not** the basis for the Commission's decision. Rather, the Commission's ruling denying ISG's motion for summary judgment was primarily based on a finding that genuine disputes of material fact existed as to Defendant Dobson's and NC OSHA's conduct regarding the incentivization of compliance officers to issue citations and open inspections. (*ISG I*, D.E. 17 at 5-7). Thus, the matters before the Commission and this Court are not substantially similar to warrant application of the *Colorado* River doctrine.[6]

B. *Burford Doctrine*

Defendants next argue that this Court may abstain under the *Burford* doctrine. (See *ISG II*, D.E. 9-1 at 21-24). "The purpose of the *Burford* abstention is to prevent a federal court from

---

[6] ISG also notes that the cases are truly parallel, and abstention is not warranted under *Colardo River*, because there is effectively no discovery in the Citation contest case. *See* 24 NCAC 03.0404 (prohibiting requests for production of documents, interrogatories, and depositions). The lack of discovery effectively bars ISG from raising the same issues in that case as this case because there is no mechanism to undercover facts related to Defendants' illegal policy and practice.

15

interfering with a 'complex state regulatory scheme concerning important matters of state policy for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded.'" *Meredith v. Talbot Cnty., Md.*, 828 F.2d 228, 231 (4th Cir. 1987) (citations omitted). "The *Burford* doctrine calls for abstention only in a 'narrow range of circumstances.'" *N. Carolina Green Party v. N. Carolina State Bd. of Elections*, 619 F. Supp. 3d 547, 559 (E.D.N.C. 2022), *dismissed*, No. 22-1830, 2022 WL 18586807 (4th Cir. Aug. 30, 2022) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726 (1996) and *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007)). Under the *Burford* doctrine,

> [w]here timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv. v. Council of New Orleans*, 491 U.S. 350, 361 (1989), *cert. dismissed*, 502 U.S. 954 (1991) (quoting *Colorado River*, 424 U.S. at 814). The "mere presence of a complicated state or local regulation does not mandate abstention." *TransDulles Ctr., Inc. v. USX Corp.*, 976 F.2d 219, 224 (4th Cir. 1992). Rather, the "presence of federal-law issues must always be a major consideration weighing against surrender." *Prentiss v. Allstate Ins. Co.*, No. 1:99CV43-C, 1999 WL 33320972, at *5 (W.D.N.C. July 9, 1999), *adhered to on reconsideration* (Aug. 4, 1999) (citing *Kruse v. Snowshoe Co.*, 715 F.2d 120, 124 (4th Cir. 1983)) (internal quotation marks omitted).

*Burford* does not apply here because, unlike a number of *Burford* cases that involve a mixture of claims under federal and state law, there are no issues of state law presented. *But see Prentiss*, 1999 WL 33320972 at *5-6 (finding that the *Burford* doctrine applied because there

were no issues of federal law presented). The Court's adjudication of the federal claims in this action would not "unduly intrude upon [a] complex administrative process[ ]," particularly in this case where "[t]he right alleged is…plainly federal in origin and nature." *Nat'l Ass'n for Rational Sexual Offense L. v. Stein*, No. 1:17CV53, 2019 WL 3429120, at *11 (M.D.N.C. July 30, 2019) (citing *Martin*, 499 F.3d at 364 and *McNeese v. Bd. of Educ.*, 373 U.S. 668, 674 (1963)). Under these circumstances, the *Burford* abstention is not applicable.

C. *Thibodaux Doctrine*

Finally, Defendants assert that this Court may abstain under the *Thibodaux* doctrine. (See *ISG II*, D.E. 9-1 at 24). "*Thibodaux* abstention is appropriate in **diversity cases** where: (1) state law is unsettled, and (2) an incorrect federal decision might embarrass or disrupt significant state policies." *Whitmire v. Southern Farm Bureau Life Ins. Co.*, 538 F. Supp. 3d 591, 598 (E.D.N.C. 2021) (citing *Nature Conservancy v. Machipongo Club, Inc.*, 579 F.2d 873, 875 (4th Cir. 1978) (per curiam), *cert. denied*, 439 U.S. 1047 (1978)) (emphasis added). As this case is brought pursuant to federal question jurisdiction, **not** diversity jurisdiction, the *Thibodaux* doctrine does not apply.

## Conclusion

For the reasons discussed above, the Court should deny Defendants' motions to dismiss.

Respectfully submitted, April 30, 2024.

        **INDUSTRIAL SERVICES GROUP, INC., d/b/a/ UNIVERSAL BLASTCO**

        _/s/ Travis W. Vance_
        Travis W. Vance (N.C. Bar No. 48676)
        David I. Klass (N.C. Bar No. 53342)
        FISHER & PHILLIPS LLP
        227 West Trade Street, Suite 2020

Charlotte, NC  28202
Telephone: (704) 334-4565
Facsimile: (704) 334-9774
E-mail: tvance@fisherphillips.com
E-mail: dklass@fisherphillips.com
*ATTORNEYS FOR PLAINTIFF*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

| | |
|---|---|
| INDUSTRIAL SERVICES GROUP, INC., d/b/a/ UNIVERSAL BLASTCO,<br><br>Plaintiff,<br><br>v.<br><br>JOSH DOBSON, *in his official capacity as North Carolina Commissioner of Labor*; and JENNIFER HAIGWOOD, *in her official capacity as Director of the Occupational Safety and Health Division of the North Carolina Department of Labor*,<br><br>Defendants. | Civil Action No. 1:24-cv-00061-MR-WCM |

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date listed below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notice to Defendants' counsel, Vanessa N. Totten, Esq. (vtotten@ncdoj.gov) and Stacey A. Phipps, Esq. (sphipps@ncdoj.gov).

Served April 30, 2024.

          Respectfully submitted,

          */s/ Travis W. Vance*
          Travis W. Vance
          Attorney for Plaintiff

          **FISHER & PHILLIPS LLP**