IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:24-cv-00061-MR-WCM

| | |
|---|---|
| INDUSTRIAL SERVICES GROUP, INC., d/b/a UNIVERSAL BLASTCO, ) ) ) Plaintiff, ) ) v. ) ) ) JOSH DOBSON, *in his official capacity as North Carolina Commissioner of Labor*, and JENNIFER HAIGWOOD, *in her official Capacity as Director of the Occupational Safety and Health Division of the North Carolina Department of Labor,* ) ) ) ) ) ) ) ) ) Defendants. ) ) | MEMORANDUM AND RECOMMENDATION |

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 9)[1], which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

---

[1] Though Defendants styled their filing as including six (6) motions to dismiss, the undersigned has construed it as being a single motion containing multiple arguments.

1

I. Relevant Procedural History

   A. Industrial I

On March 31, 2021, Plaintiff Industrial Services Group, Inc., d/b/a Universal Blastco ("Plaintiff") filed a Complaint against Josh Dobson, in his official capacity as the North Carolina Commissioner of Labor, and Kevin Beauregard, in his official capacity as the Director of the Occupational Safety and Health Division of the NC Department of Labor. (the "Industrial I," No. 1:21-cv-00090-MR-WCM).[2]

Plaintiff asserted that the federal Occupational Safety and Health Administration ("OSHA") had previously authorized North Carolina to operate a state plan (the "State Plan") which provided workplace safety and enforcement standards, and that Defendants were administering the State Plan in violation of the federal Occupational Safety and Health Act of 1970 (the "OSH Act"). Industrial I, Doc. 1 at ¶¶ 11 & 12 (citing 29 U.S.C. § 667(c)(2); 29 C.F.R. § 1902.3(d)(1)). In particular, Plaintiff asserted that the job performance of North Carolina Department of Labor ("NC OSHA") compliance officers was evaluated based on, among other things, "the number of inspections opened and closed, and the number of citations issued and upheld" – an incentivization policy or practice (the "Incentive Policy") that violated and was preempted by

---

[2] On May 30, 2023, Jennifer Haigwood was substituted for Kevin Beauregard in Industrial I.

2

Case 1:24-cv-00061-MR-WCM    Document 13    Filed 01/17/25    Page 2 of 11

§ 657(h) of the OSH Act. Id. at ¶ 2; see also 29 U.S.C. § 657(h) (prohibiting "us[ing] the results of enforcement activities, such as the number of citations issued or penalties assessed, to evaluate employees directly involved in" enforcing occupational safety and health standards and prohibiting "impos[ing] quotas or goals with regard to the results of such activities").

Plaintiff further alleged that on March 16, 2021, NC OSHA had issued thirteen (13) "citation items" (the "Citations") to Plaintiff following an investigation of work-related fatalities that occurred on September 21, 2020 at the Evergreen Packaging paper mill in Canton, North Carolina, where Plaintiff had been providing laminating services.

Plaintiff asserted that without Court intervention NC OSHA would continue its Incentive Policy and sought: (1) a declaration that the Incentive Policy violated § 657(h) of the OSH Act and had "placed Defendants' administration of the North Carolina State Plan out of compliance with the stated terms of the Plan itself"; (2) a declaration that the Incentive Policy was preempted by § 657(h) of the OSH Act; and (3) relief pursuant to 42 U.S.C. § 1983 for violation of the Due Process Clause of the Fourteenth Amendment. Plaintiff also sought injunctive relief prohibiting Defendants from engaging in enforcement activities against Plaintiff or other employers who had been inspected or received citations in violation of § 657(h).

On June 4, 2021, Defendants filed an Answer as well as a motion for judgment on the pleadings, arguing, among other things, that Defendants were entitled to sovereign immunity. Industrial I, Doc. 13.

On March 29, 2022, the motion for judgment on the pleadings was denied. Industrial I, Doc. 23.

On April 28, 2022, Defendants appealed that ruling. Industrial I, Doc. 25. Because the appeal raised the issue of sovereign immunity, Industrial I was stayed pending completion of the appeal. Industrial I, Doc. 44.

On May 16, 2023, the Court of Appeals for the Fourth Circuit affirmed the denial of the motion for judgment on the pleadings. Industrial I, Docs. 45, 48.

On June 15, 2023, Defendants filed a Motion to Dismiss which challenged Plaintiff's standing. Industrial I, Doc. 51.

The Motion to Dismiss was granted on January 16, 2024, and Plaintiff's claims were dismissed without prejudice. Industrial I, Doc. 66.

### B. Industrial II

Just over one month later, on February 22, 2024, Plaintiff filed its Complaint in the instant case, Industrial II, No. 1:24-cv-00061-MR-WCM, Doc. 1. The Complaint is generally identical to the Complaint filed in Industrial I; it asserts the same claims based on the issuance of the Citations and NC OSHA's alleged use of the Incentive Policy.

On April 16, 2024, Defendants filed the Motion to Dismiss. Doc. 9.

Plaintiff has responded, and Defendants have replied. Docs. 10, 11.

## II. Discussion

Defendants move to dismiss all of Plaintiff's claims, arguing that collateral estoppel bars this action, that the Court lacks subject matter jurisdiction, and that Plaintiff's claims are time-barred. Additionally, Defendants assert that Plaintiff has failed to state a claim and that this Court should abstain from hearing this case.[3]

### A. Collateral Estoppel

"Applying collateral estoppel forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326 (4th Cir. 2004). Specifically, collateral estoppel applies where:

> (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair

---

[3] Defendants also initially argued that Eleventh Amendment immunity applied but that argument has since been withdrawn. Doc. 12.

opportunity to litigate the issue or fact in the prior proceeding.

Id. at 326.

Here, Defendants contend that the Court's determination in Industrial I that Plaintiff lacked standing precludes Plaintiff's ability to pursue the instant matter.

A dismissal based on any defect in subject matter jurisdiction, including a lack of standing, "must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 185 (4th Cir. 2013).

Nonetheless, "a jurisdictional dismissal that does not constitute a judgment on the merits . . . still operates to bar relitigation of issues actually decided by that former judgment." Goldsmith v. Mayor & City Council of Baltimore, 987 F.2d 1064, 1069 (4th Cir. 1993); United States ex rel. May v. Purdue Pharma L.P., 737 F.3d 908, 912 n.2 (4th Cir. 2013) (same); Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 221 n. 5 (4th Cir. 2019) ("a dismissal for lack of subject matter jurisdiction has only a narrow issue-preclusive effect, not a broad claim-preclusive effect on other issues.") (citing Perry v. Sheahan, 222 F.3d 309, 318 (7th Cir. 2000)); Barna Conshipping, S.L. v. 2,000 Metric Tons, More or Less, of Abandoned Steel, 410 F. App'x 716, 720

(4th Cir. 2011) (per curiam) (unpubl.) (Collateral estoppel may "bar relitigation ... of subject-matter jurisdiction.").

Consequently, a determination that a plaintiff lacks standing may bar the plaintiff from pursuing a future case based on the same facts. See Dresser v. Backus, 229 F.3d 1142, 2000 WL 1086852 (4th Cir. Aug. 4, 2000) (unpubl.) (table) (where prior decision determined that plaintiff lacked standing, collateral estoppel precluded plaintiff from bringing second suit based on the same facts); Orr v. U.S. EPA, 641 F.Supp.3d 258, 270 (W.D.N.C. 2022) ("The facts and circumstances alleged in the Complaint herein and in the 2019 action are identical in relation to Plaintiff's standing. To allow Plaintiff to proceed with the present action would cause all Defendants to bear the expense of litigating that same issue twice, while draining this Court's valuable judicial resources. Thus, the Court finds that this action is also barred based upon the doctrine of collateral estoppel.").

Here, when it granted Defendants' Motion to Dismiss in Industrial I, the Court noted that "standing merely requires that the injury be 'fairy traceable' to the defendant, in that there must be a 'causal connection between the injury and the conduct complained of' and the injury must not be the result of 'the independent action of some third party not before the court.'" Industrial I, Doc. 66 at 2 (quoting Maddonna v. United States Dep't of Health & Hum. Servs.,

567 F. Supp. 3d 688, 704 (D.S.C. 2020) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)). The Court further explained:

> [W]hile the Plaintiff challenges the Defendants' Incentive Policy and their implementation thereof, it has not alleged that its purported injury—the citations issued against it—were not a result of actual violations of federal standards. Indeed, if all of the citations issued were properly based on separate violations of federal regulations, as the Complaint alleges they were, the alleged injury cannot be said to be caused by the Defendants' Incentive Policy, but rather was caused by the Plaintiff's own violations of such regulations.
>
> Id. at 2-3.

As noted, the Complaint in the instant matter is generally identical to the Complaint that was considered in Industrial I. Although Plaintiff's current Complaint includes additional descriptions of the Citations and alleges that the Citations were issued because of the Incentive Policy, see Doc. 1 at ¶¶ 35-36, the information supporting these allegations was known to Plaintiff at the time Plaintiff filed its Complaint in Industrial I and when the issue of standing was addressed by the Court in that matter.[4]

Under these circumstances, the undersigned is persuaded that Defendants' challenge to Plaintiff's standing as presented by the instant

---

[4] Further, Plaintiff's allegations regarding causation are made upon information and belief and do not include a contention that the Citations were not based on actual violations of workplace safety standards. See Industrial I, Doc. 66 at 2-3; Doc. 63 at 12 (Plaintiff's acknowledgement in Industrial I that the Citations could have been issued, even in the absence of the Incentive Policy).

8

Motion to Dismiss is substantively the same as that previously litigated and actually resolved in Industrial I, that the Court's finding that Plaintiff lacked standing in Industrial I was critical and necessary to the Court's judgment dismissing Industrial I without prejudice, that the Court's judgment was final and valid with respect to the issue of standing, and that Plaintiff had a full and fair opportunity to litigate the issue of standing in Industrial I.

Accordingly, the undersigned will recommend that the Motion to Dismiss based on collateral estoppel be granted. See Perry, 222 F.3d at 318 (explaining that "[a] dismissal for lack of jurisdiction precludes relitigation of the issue actually decided, namely the jurisdictional issue" and finding that the addition of new factual allegations that were known to plaintiff at the time the first suit was brought but not included in that complaint could not "transform[ ] the standing issue into a different one than that decided" in the first suit because "where a prior suit is dismissed for lack of jurisdiction, the inclusion of additional factual allegations on the jurisdictional issue will not avoid issue preclusion when those facts were available at the time the original complaint was filed.").

### B. Defendants' Remaining Arguments

In light of the conclusion, described above, regarding Plaintiff's standing, the undersigned does not reach Defendants' remaining arguments, some of which would require the Court to engage in a merits analysis. So. Walk at

9

Broadlands Homeowner's Ass'n, Inc., 713 F.3d at 185 (4th Cir. 2013) (citing cases including Brereton v. Bountiful City Corp., 434 F.3d 1213, 1218 (10th Cir.2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is incapable of reaching a disposition on the merits of the underlying claims.")).

## III. Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that Defendants' Motion to Dismiss (Doc. 9) be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE**.

*Signed,*

W. Carleton Metcalf
United States Magistrate Judge

10

Case 1:24-cv-00061-MR-WCM    Document 13    Filed 01/17/25    Page 10 of 11

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).